IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

DOUG BECKER, )
       Plaintiff, )
)
v. ) Case No. 3AN-08-11382 CI
)
KIKIKTAGRUK INUPIAT )
CORPORATION, an Alaska Village )
Corporation, )
       Defendant. )
_____ )

## COMPLAINT

COMES NOW, DOUG BECKER, the plaintiff above named, by and through his attorneys, Isaac Derek Zorea and Moshe Calberg Zorea, and complains as follows:

### I. JURISDICTION

1.1.    At all relevant times, plaintiff, DOUG BECKER, resided in Anchorage, Alaska, Third Judicial District, State of Alaska.

1.2.    At all relevant times, defendant, KIKIKTAGRUK INUPIAT CORPORATION, an Alaska Village Corporation, has been operating in Alaska under the name of KIC Lumber, Hardware & Auto, LLC, whose main base of operations is in Kotzebue, Alaska.

1.3.    Plaintiff, Doug Becker, alleges that he resided in Anchorage, Alaska, Third Judicial District, State of Alaska, at the time that defendant, KIC Lumber, Hardware & Auto, LLC, recruited him to work in Kotzebue, Alaska.

1.4.    Plaintiff, Doug Becker, alleges that he interviewed for his job working for defendant, Kikiktagruk Inupiat Corporation, in Anchorage, Alaska and its representative Tim Scherech arrived in the city to conduct the interview.

ISAAC DEREK ZOREA
ATTORNEY & COUNSELOR AT LAW
P.O. BOX 210434
ANCHORAGE, AK 99521
PHONE: (907) 830-1385  FAX: (907) 677-3779

1.5. Plaintiff, Doug Becker, alleges that defendants' manager, Bish Gallahorn realized at the time that he recruited Becker that he would retain residency in Anchorage, Alaska, even while working in Kotzebue, Alaska.

1.6. Venue properly rests within the Third Judicial District, State of Alaska.

## II. FACTS

2.1. On or about August 2, 2006, defendant, Kikiktagruk Inupiat Corporation, hired plaintiff Doug Becker as its Retail Store manager for its company, KIC Lumber, Hardware, & Auto, LLC (hereinafter: KIC Lumber).

2.2. On or about August 2, 2006, defendant's President, Bish Gallahorn affirmed that plaintiff, Doug Becker, would be paid $80,000.00 annually, for the first year, and that Kikiktagruk Inupiat Corporation would provide Becker housing and utilities in Kotzebue, as part of the compensation package, with the actual date of arrival in Kotzebue to be decided at a later date.

2.3. On or about January 2, 2007, plaintiff Doug Becker arrived in Kotzebue, Alaska, whereupon he began his job as retail manager for defendant's company, KIC Lumber.

2.4. Prior to arriving in Kotzebue, Alaska, Bish Gallahorn made assurances that as manager of KIC Lumber, Becker would have authority to hire and fire, and to direct the operations of the business, concerning administration and inventory purchases.

2.5. After beginning his duties as "manager" for KIC Lumber, plaintiff Doug Becker quickly discovered that he lacked many of the discretionary responsibilities traditionally afforded a store manager. Specifically, Becker had no control over administrative costs, or inventory purchases, and little discretion concerning hiring and firing of employees.

2.6. On or about January 15, 2007, plaintiff Doug Becker attended his first board meeting for defendant Kikiktagruk Inupiat Corporation, and during this meeting he first learned of the corporation's "native preference" hiring policy, which specifically stated that shareholder hiring needed to be as high as possible, and that preference needed to be given to any shareholder.

2.7. Shortly after attending the January 15, 2007 board meeting, plaintiff Doug Becker spoke with Kikiktagruk Inupiat Corporation's President, Tim Scherech, concerning the native preference policies of the company. During this meeting Becker stated shareholder preference seemed an "euphemism for Alaska Native," and that he believed the policy was unconstitutional. Tim Scherech became defensive at Becker's statement, and claimed that the policy comported with federal law.

2.8. At numerous occasion while working for Kikiktagruk Inupiat Corporation, plaintiff Doug Becker received complaints by the corporation's human resource manager, Sally Melton, concerning her belief that Becker did not adequately follow the companies native preference hiring policies. Further, Melton complained that Becker had hired Caucasian employees to work at KIC Lumber.

2.9. During his employment with Kikiktagruk Inupiat Corporation, plaintiff Doug Becker noticed that many Native-Alaskan (Shareholder) employees would not come to work on time, or when scheduled. Becker was told that he could not terminate these employees for their work problems because of their status as Native-Alaskan (Shareholder) employees.

2.10. As a direct result of the failure of Native-Alaskan (Shareholder) employees not showing up on time, or when scheduled, to work, plaintiff Doug Becker was compelled to perform the menial tasks related to operating KIC Lumber, including opening and closing the store, stocking items, and handling the cashier duties of the business.

CIVIL COMPLAINT: *BECKER V. KIKIKTAGRUK INUPIAT CORPORATION*      PAGE - 3 -

EXHIBIT A
Page 3 of 9

2.11. Frequently, plaintiff Doug Becker requested the authority to hire new employees, or fire poor performing employees, so he would not have to perform to menial duties associated with running KIC Lumber, and Becker's requests were denied, thereby compelling him to perform the menial jobs associated with running KIC Lumber.

2.12. During the period of his employment for Kikiktagruk Inupiat Corporation, plaintiff Doug Becker, with the knowledge of his employer, was required to work in excess of 40 hours per week, and that a majority of the time spent working at KIC Lumber were of a non-managerial nature. For the hours that he worked, Becker never received any overtime compensation.

2.13. During the time that he was employed by Kikiktagruk Inupiat Corporation, plaintiff Doug Becker resisted numerous requests by his supervisors to take employment decisions that Becker believed to be illegal. Further, when Becker refused to perform conduct that he believed illegal, he explained to his supervisors that his refusal was based on his belief that the requested conduct was illegal.

2.14. Plaintiff, Doug Becker, alleges that some of the illegal conduct that he refused to do related to a request that he prefer Native-Alaskan employees over Caucasian employees, that he terminate a disabled employee because management feared that he would get injured and incur workers compensation liability, and that he not terminate one employee because the company owed her "a lot of back pay."

2.15. After receiving increased criticism for not hiring sufficient Alaska-Native employees, Kikiktagruk Inupiat Corporation terminated plaintiff Doug Becker's employment suddenly, on or about June 22, 2007. One of the stated reasons for his termination was Becker's resistance to company's native hire preference policy.

2.16. Despite being promised employment for at least one year, when Kikiktagruk Inupiat Corporation terminated plaintiff Doug Becker's employment, it did not give him the remaining six months of his promised contract.

### III. CAUSES OF ACTION:

A. ALASKA WAGE & HOUR VIOLATION

3.1. According to A.S. 23.10.060(b), "an employee is entitled to overtime compensation for hours worked in excess of 40 hours a week," payable at a rate of one and one-half times the regular rate of pay.

3.2. According to A.S. 23.10.110(a), if an employer violates A.S. 23.10.060, requiring overtime compensation, the employer is "liable to an employee affected in the amount of unpaid . . . overtime compensation, . . . in an additional equal amount as liquidated damages."

3.3. According to A.S. 23.10.110(c), if the employee prevails in an action to recover from employer unpaid wages or overtime wages, the court shall "allow costs of the action and, . . . reasonable attorney fees to be paid by the defendant," unless the employer's failure to pay was made in good faith.

3.4. On or about the time that plaintiff Doug Becker began working as a manager of KIC Lumber, defendant Kikiktagruk Inupiat Corporation, knew, or had reason to know, that if the majority of Becker's job duties were non-managerial, then he would not be an exempt employee, and he would be entitled to overtime compensation for overtime hours worked.

3.5. During the time Doug Becker worked for defendant Kikiktagruk Inupiat Corporation, it had reasonable knowledge that Becker did not possess the administrative responsibilities, or inventory responsibilities, or adequate staff, such that he could devote adequate managerial duties so as to remain an exempt employee.

3.6.   Between January 1, 2007 and July 1, 2007, plaintiff Doug Becker worked on average 60 hours a week, or 20 hours of overtime per week, with the exact amount of hours to be proven at trial.

3.7.   As of the filing of this complaint, defendant has refused to pay plaintiff for any overtime wage, or other required compensation, that he worked during the time he worked for defendant Kikiktagruk Inupiat Corporation. Plaintiff requests payment of these unpaid overtime wages, liquidated damages, and attorney fees pursuant to Alaska's Wage and Hour statute.

3.8.   Plaintiff also requests all other remedies that the court deems just, and appropriate, based on the willfulness of defendant's wage and hour violation.

B.   **DISPARATE TREATMENT AND RETALIATION ON THE BASIS OF RACE: VIOLATION OF 42 U.S.C. § 1981.**

3.9.   Plaintiff, Doug Becker, alleges and affirms that he is a member of a racial classification, Caucasian, that is protected from discrimination, and/or retaliation, under the federal statute 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

3.10.   During the period of plaintiff's employment for defendant, Kikiktagruk Inupiat Corporation, Doug Becker did experience disparate treatment on the basis of his racial classification, by his supervisor, Tim Scherech, by being treated differently in the terms and conditions of his employment from other employee not within his racial classification.

3.11.   In addition to being treated differently by his employer because of his race, Becker's employer, Kikiktagruk Inupiat Corporation, also wanted Becker to follow discriminatory practices in hiring, and terms and conditions of employment, preferring Native-Alaskan employees to non-Native Alaskan employees.

3.12. During the period of his employment, plaintiff Doug Becker objected to his supervisor, Tim Scherech, concerning his disparate treatment, and refused to implement the disparate policies that defendant Kikiktagruk Inupiat Corporation required him to implement.

3.13. Plaintiff Doug Becker alleges, and affirms, that because he refused to condone the company's disparate policies concerning its hiring, and terms of employment, defendant Kikiktagruk Inupiat Corporation did retaliate against Becker and terminate his employment, and/or subjected him to disparate treatment by terminating Becker, in violation of his contract, based on standards that did not apply to defendant's Alaskan Native employees.

3.14. Plaintiff, Doug Becker, alleges that the conduct outlined in paragraph 3.9 to 3.13 above, did violate the protections provided him within federal statute 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, which prohibits disparate treatment and retaliation based on race.

3.15. As compensation for the conduct alleged above, plaintiff, Doug Becker, seeks all remedies available under 42 U.S.C. § 1981, including but not limited to, compensatory damages, lost pay, lost opportunity for advancement, emotional damages, humiliation, punitive damages, and attorney fees.

C. TORT OF WRONGFUL DISCHARGE

3.16. Plaintiff, Doug Becker reaffirms and incorporates the facts and allegations within paragraphs 2.1 through 2.16 above, and alleges that by such conduct defendant Kikiktagruk Inupiat Corporation, illegally discharged plaintiff when it retaliated against him because he refused to implement the illegal policies and practices of the company.

CIVIL COMPLAINT: *BECKER V. KIKIKTAGRUK INUPIAT CORPORATION*       PAGE - 7 -

EXHIBIT A
Page 7 of 9

3.17.   Plaintiff, Doug Becker alleges that when he contracted with Kikiktagruk Inupiat Corporation, he understood that he and defendant would act in good faith toward each other, and that Becker would not be asked to implement any policies that violated state or federal laws or regulations.

3.18.   Plaintiff, Doug Becker affirms and states that his employer Kikiktagruk Inupiat Corporation, through the actions of its President, Tim Scherech, did request that Becker implement policies and practices that violated state and federal laws, in that these policies or practices would have discriminated against KIC Lumber employees based on race and disability.

3.19.   Plaintiff, Doug Becker affirms and states that when he refused to implement policies and practices that he believed violated state and federal laws and statutes, his employer defendant Kikiktagruk Inupiat Corporation retaliated against him, terminated his employment, thereby creating a situation that a reasonable person would consider unfair, and outrageous, and in violation of the Covenant of Good Faith and Fair Dealing, and the standards of acceptable public policies.

3.20.   Plaintiff, Doug Becker, alleges that defendant's conduct, as alleged in paragraphs 3.16 though 3.19 did constitute a willful and/or reckless violation of the duty it owed to Becker, and violated public policy and federal and state statutes, and that such conduct was outrageous, reckless, and/or negligent, thereby violating the Covenant of Good Faith and Fair Dealing, and constituting the tort of wrongful discharge.

3.21.   As remedy for the conduct allegedly perpetrated by Kikiktagruk Inupiat Corporation, plaintiff Doug Becker, does request all available remedies, including punitive damages, lost wages, future loss wages, and other remedies available under Alaska law related to the tort of wrongful discharge, and the Covenant of Good Faith and Fair Dealing.

WHEREFORE, plaintiff Doug Becker requests judgment against defendant Kikiktagruk Inupiat Corporation, as follows:

1. Full and complete payment of all damages permitted that relate to plaintiff's claim against defendant, alleging a violations of Alaska's Wage and Hour Act, specifically requesting payment of all unpaid overtime wages, liquidated damages, and attorney fees pursuant to Alaska's Wage and Hour statute.

2. Full and complete payment of all damages relating to plaintiff's claim, alleging violations of 42 U.S.C. § 1981, related to race discrimination, and/or retaliation, including lost wages, future wages, emotional distress, punitive damages, attorney fees, prejudgment interest, and other permitted remedies, within the jurisdictional limit of this court, with exact amount to be proven at trial.

3. Full and complete payment of all damages relating to plaintiff's claim, alleging the Tort of Wrongful Discharge, a violation of the Covenant of Good Faith and Fair Dealing, including lost wages, future wages, punitive damages, if permitted, attorney fees, prejudgment interest, and other permitted remedies, within the jurisdictional limit of this court, with exact amount to be proven at trial.

4. Such other and further relief as the court may deem just and proper based on the egregious nature of defendant's conduct.

DATED this 23 Day of October 2008.

Moshe Calberg Zorea
Alaska Bar No. 8406055
Attorney for Doug Becker

Isaac D. Zorea
Alaska Bar No. 0011090
Attorney for Doug Becker

CIVIL COMPLAINT: *BECKER V. KIKIKTAGRUK INUPIAT CORPORATION*   PAGE - 9 -

EXHIBIT A
Page 9 of 9