1   Ted Wellman
    M. Scott Broadwell
2   Davis Wright Tremaine LLP
    701 West 8th Avenue, Suite 800
3   Anchorage, Alaska  99501
    (907) 257-5300
4

5   Attorneys for Defendant Kikiktagruk
    Inupiat Corporation
6

7

8                  IN THE UNITED STATES DISTRICT COURT

9                     FOR THE DISTRICT OF ALASKA

10
    DOUG BECKER,                        )
11                                      )
                 Plaintiff,             )
12                                      )   Case No. 3:09-cv-00015-TMB
          vs.                           )
13                                      )
                                        )
14  KIKIKTAGRUK INUPIAT                 )
    CORPORATION, an Alaska Village      )
15  Corporation,                        )
                                        )   **DEFENDANT'S MOTION FOR**
16               Defendant.             )   **SUMMARY JUDGMENT**
                                        )
17  _____)

18                       **I.  INTRODUCTION**

19        Defendant Kikiktagruk Inupiat Corporation ("KIC") respectfully moves pursuant to

20  Fed. R. Civ. P. 56 for summary judgment against Plaintiff Doug Becker ("Becker") on all

21  claims.  Becker's own admissions, his verified answers to interrogatories, and

22  documents produced during lengthy and contested discovery demonstrate that there

23  are no genuine issues to any material fact and that KIC is entitled to judgment as a

24  matter of law on each of Becker's claims.  This motion is supported by the

25  memorandum below, the Affidavit of Bill Morrissey, and excerpts from discovery filed

    herewith, and the records and pleadings herein.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

KIC is entitled to judgment as a matter of law for the following reasons:  (1) The undisputed facts show that Becker was at all relevant times exempt from the Alaska Wage and Hour Act as an "executive employee"; (2) Becker's claims under 42 U.S.C. § 1981 fail because Congress expressly shielded Alaska Native Corporations from employment discrimination claims, and even if Becker were able to bring claims against KIC under 42 U.S.C. § 1981, he has failed to establish a prima facie case of either disparate treatment or retaliation; (3) Becker's tort of wrongful discharge claim fails because he cannot identify a single public policy violated by his termination; and (4) Becker's claims must be dismissed for failure to mitigate his alleged damages.

## II.  FACTS

KIC is one of approximately 200 Native Village Corporations organized under the Alaska Native Claims Settlement Act ("ANCSA").[1]  Congress passed ANCSA to settle "all claims by Natives and Native groups of Alaska, based on aboriginal land claims."[2]  Towards that end, the Act extinguished aboriginal land titles and claims held by Alaska Natives based upon aboriginal title in exchange for 40,000,000 acres of land and $962,500,000.[3]  Under ANCSA, Native residents of Native Villages were required to organize as corporations in order to receive ANCSA benefits.[4]  KIC is one such Alaska Native Village Corporation.

KIC was authorized under ANCSA to issue 100 shares in the corporation to each Native enrolled in the Village pursuant to 43 U.S.C. 1604.[5]  For purposes of this initial distribution of shares in the corporation, a "Native" is an individual who has at least one-fourth degree of Alaska Indian, Eskimo, or Aleut blood or who was regarded as Alaska Native by the Native village or group to which the individual's parents belonged.[6] ANCSA limits a shareholder's right to transfer such shares, but provides for inheritance without regard to whether or not the person receiving the shares is a Native under the

---

[1]      43 U.S.C. §§ 1601-28.
[2]      43 U.S.C. § 1601(a).
[3]      *See generally United States v. Atlantic Richfield Co.*, 612 F.2d 1132, 1134 (9th Cir. 1980).
[4]      43 U.S.C. § 1607.
[5]      43 U.S.C. § 1607(c); 43 U.S.C. § 1606(g)(1).
[6]      43 U.S.C. § 1602(b).

Defendant's Motion for Summary Judgment - 2
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

Act.[7]  KIC has instituted a policy establishing a hiring preference for such shareholders. The shareholder hiring preference provides in full:  "To the extent legally possible, KIC will give preference to its shareholders, shareholder spouses and shareholder dependents, provided they are qualified.  Secondarily, KIC will also give preference to shareholders of NANA, then to shareholders of other Alaska Native corporations."[8]

KIC hired Becker as the manager of one of its subsidiaries, KIC Hardware, Auto & Lumber, LLC. ("KIC HAL").[9]  Becker is not a shareholder of KIC.  As the KIC HAL manager, Becker was responsible for managing all aspects of the operation of a hardware and autoparts store in Kotzebue, Alaska (the "KIC HAL store").[10]  Becker began work as the KIC HAL manager on or about January 2, 2007.[11]  As KIC HAL manager, Becker was responsible for interviewing, selecting, and training KIC HAL store employees,[12] setting and adjusting rates of pay for and hours worked by KIC HAL store employees,[13] directing the work of KIC HAL store employees,[14] appraising the performance of KIC HAL store employees,[15] disciplining KIC HAL store employees,[16] determining the merchandise to be bought, stocked, and sold in the KIC HAL store,[17] and providing for the safety and security of KIC HAL store employees and property.[18] Becker allegedly was additionally required to open and close the KIC HAL store, stock

---

[7]     43 U.S.C. § 1606(h)(1) & (2).  Note that ANCSA does restrict voting rights if the recipient is not a Native.  *Id.* § 1606(h)(2)(C).

[8]     Affidavit of Bill Morrissey, ¶ 2 and Exhibit 1 thereto.

[9]     Complaint ¶ 2.1.  (Doc. 1-2, p. 2 of 9.)

[10]    *Id.*

[11]    Complaint ¶ 2.3.  (Doc. 1-2, p. 2 of 9.)

[12]    Plaintiff's Fifth Amended Response to Defendant's Initial Discovery Requests [hereinafter "Becker's Response to KIC's Request for Admission" or "Becker's Response to KIC's Interrogatory"], Response to Interrogatory No. 3 and Response to Request for Admission No. 4.

[13]    Becker's Responses to KIC's Requests for Admission Nos. 7 & 8 and Plaintiff's Response to Defendant's Second Discovery Request Supplemented Amended (hereinafter "Becker's Second Response to KIC's Interrogatory"), Response to Interrogatory No. 11.

[14]    Becker's Response to KIC's Request for Admission No. 9.

[15]    Becker's Response to KIC's Request for Admission No. 10.

[16]    Becker's Response to KIC's Request for Admission No. 11.

[17]    Becker's Response to KIC's Request for Admission No. 13.

[18]    Becker's Response to KIC's Requests for Admission Nos. 14 & 15.

Defendant's Motion for Summary Judgment - 3
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

items, and handle the cash register because of the failure of some employees to show up on time or when scheduled to work.[19]

KIC terminated Becker on June 22, 2007, for his ineffective management of personnel, demeaning treatment of employees, insufficient financial oversight of the KIC HAL store, and frequent travel.[20]  A subsequent e-mail from then KIC President Tim Schuerch to Becker further explained that Becker was also terminated for his disregard of the KIC shareholder preference hiring policy.[21]

### III.  DISCUSSION

After a lengthy and contested discovery process, KIC moves for summary judgment pursuant to Rule 56, Fed. R. Civ. P.  Summary judgment should be granted if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  As the moving party, KIC has the initial burden of demonstrating an absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Becker can rebut KIC's entitlement to summary judgment only by going beyond the pleadings and by adducing through use of admissible evidence "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  KIC is entitled to a judgment as a matter of law when it has established that Becker "has failed to make a sufficient showing on an essential element of [his] case with respect to which he has the burden of proof."  *Id.* at 323.

KIC easily satisfies its burden.  Notwithstanding five attempts at responding to KIC's discovery requests, including a final supplementation compelled by this Court, Becker failed to show the essential elements of any of his claims.  Becker asserts three claims:  (1) violation of the Alaska Wage & Hour Act,[22] (2) violation of 42 U.S.C. § 1981,[23] and (3) a claim in tort for wrongful discharge.[24]  Becker fails after a protracted

---

[19] Complaint ¶ 2.10.  (Doc. 1-2, p. 3 of 9.)
[20] Affidavit of Bill Morrissey ¶ 3 and Exhibit 2 thereto.
[21] Affidavit of Bill Morrissey ¶ 4 and Exhibit 3, Page 2, thereto.
[22] Complaint ¶¶ 3.1 – 3.8.  (Doc. 1-2, pp. 5-6 of 9.)
[23] Complaint ¶¶ 3.9 – 3.15.  (Doc. 1-2, pp. 6-7 of 9.)
[24] Complaint ¶¶ 3.16 – 3.21.  (Doc. 1-2, pp. 7-8 of 9.)

Defendant's Motion for Summary Judgment - 4
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

discovery to provide evidence sufficient to support any claim.  Moreover, even if Becker had presented evidence sufficient to oppose KIC's Motion for Summary Judgment, Becker's claims must be dismissed for his complete failure to mitigate his damages.

**A.    Becker's claim under the Alaska Wage and Hour Act that KIC failed to pay overtime payments must be dismissed because Becker was exempt under the Act as an executive and not entitled to be paid overtime.**

The Alaska Wage and Hour Act exempts executive employees from the Act's overtime requirements.[25]  Effective November 7, 2005, "executives" are defined under the state act as under federal law.[26]  Under federal and Alaska law, an employee meeting the following criteria is deemed an executive and accordingly exempt from Alaska's wage and hour overtime requirements:  (1) the employee must be compensated on a salary or fee basis at a rate of not less than two times Alaska's minimum wage for the first forty hours of employment each week; (2) the employee's primary duty must be management; (3) the employee must customarily and regularly direct the work of two or more other employees; and (4) the employee must have the authority to hire, fire, or otherwise change the status of other employees, or the employee's suggestions on such matters must be given particular weight by his or her superiors.[27]

For purposes of analysis under the second of the four executive factors, "management" includes but is not limited to:  (1) interviewing, selecting, and training employees; (2) setting and adjusting rates of pay and hours of work; (3) directing the work of employees; (4) maintaining sales records; (5) appraising employees; (6) disciplining employees; (7) determining techniques to be used; (8) apportioning work; (9) determining merchandise to be bought, stocked, and sold; (10) controlling flow of merchandise; (11) providing for safety and security of employees and property; (12) planning and controlling the budget; and (13) monitoring or implementing legal compliance measures.[28]  A "primary duty" is the principal, main, major or most important

---

[25]    AS § 23.10.055(a)(9)(A).
[26]    AS § 23.10.055(c)(1).
[27]    29 C.F.R. § 541.100(a); AS § 23.10.055(b).
[28]    29 C.F.R. § 541.102.

Defendant's Motion for Summary Judgment - 5
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

duty that an employee performs.[29]  Whether or not a task is the primary duty is a determination based on the facts with a major emphasis put on the character of the job as a whole.[30]  Factors in that determination include:  (1) the relative importance of exempt duties to other duties; (2) the amount of time spent doing exempt work; (3) relative freedom from direct supervision; and (4) the relationship between salary and the wages paid to other employees for non-exempt work.[31]  An employee may have management as his or her primary duty even if he or she spends more than 50% of his or her time performing non-exempt work.[32]

With respect to the third factor, "customarily and regularly" means greater than occasional, but less than constant and refers to work normally and recurrently performed.[33]  And with respect to the fourth factor, whether or not an employee's suggestions are given "particular weight" depends on a number of additional factors, including:  (1) whether it is part of an employee's duties to make such suggestions and recommendations; (2) the frequency with which an employee makes suggestions or a supervisor requests such suggestions; and (3) the frequency that such suggestions are relied on.[34]  A suggestion can carry particular weight even if the opinion of a higher level of management carries more weight.[35]

Becker's responses to discovery show unequivocally that Becker was an executive over the entire course of his employment at KIC HAL.  In particular, (1) Becker was compensated on a salary or fee basis at a rate far more than two times Alaska's minimum wage for the first forty hours of employment each week; (2) Becker's primary duty was management; (3) Becker customarily and regularly directed the work of two or more other employees; and (4) Becker had the authority to hire, fire, or otherwise change the status of other employees.

---

[29]     29 C.F.R. § 541.700(a).
[30]     *Id.*
[31]     *Id.*
[32]     29 C.F.R. § 541.700(c).
[33]     29 C.F.R. § 541.701.
[34]     29 C.F.R. § 541.105.
[35]     *Id.*

Defendant's Motion for Summary Judgment - 6
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

1. <u>Becker was compensated on a salary basis at a rate not less than two times Alaska's minimum wage</u>.

Becker was compensated at the rate of $80,000 annually, plus a housing allowance for a total compensation package of $93,462.96 per year.[36]  This works out to the equivalent of an hourly wage of $44.93 for the first 40 hours of employment each week.  Alaska's minimum wage was $7.15 an hour during the course of Becker's employment with KIC HAL.[37]  $44.93 is greater than twice $7.15, satisfying the first prong of executive analysis.

2. <u>Becker's primary duty as the KIC HAL manager was management</u>.

Becker's five iterations of responses to KIC's first set of discovery requests and subsequent responses to KIC's second set of discovery requests make clear that Becker's primary duty was management.

a. *Interviewing, selecting, and training employees*.  Becker admits that he interviewed potential employees, stating that he "conducted interviews in whatever fashion seem[ed] appropriate given the employee being interviewed."[38]  Becker further describes the hiring process generally, noting, "It was my responsibility to identify hiring needs for KIC/HAL," and "Subject to approval by Schuerch, and later Hildreth, all hiring decisions that were made for HAL were made by me."[39]  In short, there is no question that Becker was instrumental in all interviewing, selecting, and training of employees in the KIC HAL store.

b. *Setting and adjusting rates of pay and hours worked.*  Becker admits that he set the rates of pay for new employees in the KIC HAL store[40] and denies that he set the hours worked by KIC HAL store employees.  Yet Becker later explains that he felt limited in his ability to change the schedules of four employees hired before Becker became the KIC HAL store manager, but did have control over

---

[36]   Affidavit of Bill Morrissey, ¶ 5.
[37]   AS § 23.10.065(a) (2008).
[38]   Becker's Response to KIC's Interrogatory No. 3; Becker's Response to Request for Admission No. 4.
[39]   Becker's Response to KIC's Interrogatory No. 3.
[40]   Becker's Response to KIC's Request for Admission No. 8.

Defendant's Motion for Summary Judgment - 7
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

schedules of the other employees in the store.[41]   Becker was further making decisions regarding whether or not KIC HAL would be opened or closed for holidays.[42]   By deciding rates of pay and scheduling, even if limited with respect to certain employees, Becker was at all times acting as a manager.

c.   *Directing the work of employees*.   Becker admits that he directed the work of KIC HAL store employees,[43] and provides examples of such direction, noting that he delegated merchandise ordering where appropriate.[44]

d.   *Appraising employees*.   Becker admits that he was responsible for and conducted employee performance reviews for employees of KIC HAL.[45]

e.   *Disciplining employees*.   Becker has admitted that he disciplined employees without further supervision until the KIC human resources department instituted a review procedure.[46]   Indeed, Becker has described interactions following a complaint that he "had been too harsh in [his] discipline [of a KIC HAL employee] for his failure to work during inventory."[47]

f.   *Determining techniques to be used*.   Becker has described a number of instances in which he determined the techniques to use in a given situation. For example, with respect to interviewing prospective employees, Becker stated, "I conducted interviews in whatever fashion seem[ed] appropriate given the employee being interviewed.  KIC did not instruct me on a specific interview procedure to implement."[48]   Similarly, "I had no generalized training procedure for employees—other than to train each in the manner that they needed to be trained."[49]   Becker was routinely determining and implementing the techniques that were appropriate in the KIC HAL store.

---

[41]    Becker's Response to Request for Admission No. 7; Becker's Second Response to KIC's Interrogatory No.11; Affidavit of Bill Morrissey, ¶ 6.
[42]    Affidavit of Bill Morrissey, ¶ 4 and Exhibit 3, Page 7, thereto.
[43]    Becker's Response to KIC's Request for Admission No. 9.
[44]    Becker's Second Response to KIC's Interrogatory No. 12.
[45]    Becker's Response to KIC's Request for Admission No. 10
[46]    Becker's Response to KIC's Request for Admission No. 11.
[47]    Becker's Response to KIC's Interrogatory No. 7.
[48]    Becker's Response to KIC's Interrogatory No. 3.
[49]    *Id.*

Defendant's Motion for Summary Judgment - 8
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8ᵗʰ Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

g.      *Determining merchandise to be bought, stocked, and sold.*  Becker has denied that he determined the merchandise to be bought, stocked, and sold in the KIC HAL store,[50] but that denial does not stand in the face of his subsequent description of the inventory process at KIC HAL.  Becker stated that, "As store manager I took responsibility for personally placing large volume orders such as lumber, and bulk items."[51]  Those decisions included a decision to purchase approximately $25,000 worth of used electrical equipment for resale.[52]  With respect to smaller orders, Becker delegated that responsibility to KIC HAL employees, although he closely monitored those efforts.[53]  A June 7, 2007, e-mail shows that Becker was involved in inventory decisions even up to shortly before his termination:  "after a week of haggling over prices and terms, our lumber and insulation order for 1st barge has been finalized and getting ready to sail from SEA.  I hope I ordered enough."[54]  Becker was at all times controlling store inventory as a manager.

h.      *Providing for safety and security of employees and property.*  Becker admitted that as the KIC HAL store manager he was responsible for providing for the safety and security of employees and property, albeit qualified to the extent that personal safety was the responsibility of all employees.[55]  As part of Becker's responsibility to provide for the safety or employees and property, Becker instituted policies limiting the doors employees could use to enter or leave the building, requiring inspection of bags and cases as customers left the building, and restricting access to the non-public portions of the KIC HAL store.[56]

The above-described managerial duties were in fact Becker's primary duties as KIC HAL store manager.  Becker has alleged that he was "compelled to perform the menial tasks related to operating KIC Lumber, including opening and closing the store,

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

---

[50]      Becker's Response to KIC's Request for Admission No. 13.
[51]      Becker's Second Response to KIC's Interrogatory No. 12.
[52]      Affidavit of Bill Morrissey, ¶ 4 and Exhibit 3, pp. 4 to 6 thereto.
[53]      Becker's Second Response to KIC's Interrogatory No. 12.
[54]      Affidavit of Bill Morrissey, ¶ 4 and Exhibit 3, p. 8 thereto.
[55]      Becker's Response to KIC's Requests for Admission Nos. 14 & 15.
[56]      Becker's Response to KIC's Request for Admission No. 15 and the document bates stamped #KIC0058 referenced therein.

Defendant's Motion for Summary Judgment - 9
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

stocking items, and handling the cashier duties of the business."[57]  Yet even taking the facts as alleged as true for purposes of this summary judgment motion, the mere fact that Becker was required as manager to open or close the store, stock items, or handle the cash register, does not divest Becker of his status as an exempt executive. Becker's role in hiring, administering discipline, setting rates of pay, setting store hours and employee schedules, directing the work of KIC HAL employees, determining the merchandise to be bought, stocked, and sold, and providing for safety were far more important to KIC HAL store operations than his duties opening or closing the store, stocking, or running the cash register.  While any number of KIC HAL store employees could work the cash register, only Becker could perform staff evaluations, make hiring decisions, and otherwise manage store operations.  Becker performed his managerial tasks with freedom from direct supervision[58] at a salary substantially greater than the wages paid any other employee in the KIC HAL store.[59]

Becker's own description from his resume of his role as KIC HAL store manager summarizes what is clear from a review of the facts:  Becker's responsibilities were to "[m]anage and maintain all operations of ACE Hardware and NAPA Auto Parts stores. Hire and supervise all store personnel."[60]  Becker did not describe his duties at KIC HAL as opening and closing the store, stocking, and operating the cash register for the simple reasons that those duties were not his primary duties as manager.

Furthermore, management was Becker's primary duty even if he spent more than 50% of his time performing non-exempt work.[61]  As federal regulations recognize, "assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time

---

[57]   Complaint ¶ 2.10.  (Doc. 1-2, p. 3 of 9.)
[58]   Affidavit of Bill Morrissey, ¶ 4 and Exhibit 3, p. 1 thereto.
[59]   Affidavit of Bill Morrissey, ¶ 7.
[60]   Becker's Response to KIC's Request for Admission No. 18 and the document bates stamped #KIC0055 referenced therein.
[61]   29 C.F.R. § 541.700(c).

Defendant's Motion for Summary Judgment - 10
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

performing nonexempt work such as running the cash register."[62]  While there has been no accounting yet as to the exact percentage of time Becker spent on "menial tasks," even substantial time doing register work or stocking will not alter the analysis and should not prevent a decision on summary judgment where the evidence developed to date strongly supports Becker's role as a full exempt executive with management as his primary duty.

> 3.    Becker customarily and regularly directed the work of two or more other employees.

Becker admits that he directed the work of KIC HAL employees.[63]  During the course of Becker's tenure as KIC HAL store manager, he was responsible for supervising and directing the work of between approximately 8 and 15 employees at any given time.[64]  At all times, this was more than two employees, and consistent with Becker's status as an exempt executive manager.

> 4.    Becker had the authority to hire, fire, or otherwise change the status of other employees.

As discussed above in relation to Becker's primary duties as KIC HAL store manager, Becker had the authority to hire, fire, or otherwise change the status of other employees.  Indeed, Becker signed a number of Personnel Action Forms directly changing the status of KIC HAL employees.[65]  As Becker has discussed, hiring was his responsibility subject only to approval by KIC president Tim Schuerch.[66]  The standard for determining whether or not an employee is an exempt executive does not require that a manager make such hiring with unfettered autonomy.  An employee is an exempt executive even if his or her decisions regarding hiring and firing are subject to approval by a higher level of management.[67]  Becker has alleged that he requested and was denied authority to fire individuals,[68] but subsequently recanted that allegation by

---

[62]    29 C.F.R. § 541.700(c).
[63]    Becker's Response to KIC's Request for Admission No. 9.
[64]    Affidavit of Bill Morrissey, ¶ 6.
[65]    Affidavit of Bill Morrissey, ¶ 8 and Exhibit 4 thereto.
[66]    Becker's Response to KIC's Interrogatory No. 3.
[67]    29 C.F.R. § 541.105.
[68]    Complaint, ¶ 2.11.  (Doc. 1-2, p. 4 of 9.)

Defendant's Motion for Summary Judgment - 11
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

admitting he never made any such request.[69]  Becker's responsibility for hiring and terminating KIC HAL store employees was further consistent with Becker's status as an exempt executive.

        5.   <u>Conclusion</u>.

There is no issue as to any of the facts relevant to a determination of Becker's status as an executive.  Indeed, most of the facts discussed above arise directly from Becker's own admissions.  Becker was compensated on a salary basis at more than two times Alaska's minimum wage, his primary duty was managing the KIC HAL store which included hiring and disciplining employees, setting rates of pay and hours worked for KIC HAL employees, directing the work of KIC HAL store employees, conducting employee reviews, determining merchandise to be bought, stocked, and sold in the KIC HAL store, and providing for the safety of employees and property in the KIC HAL store. Becker was at all times responsible for directing the work of two or more employees with authority to hire, fire, or otherwise change the status of such store employees. Because Becker was exempt as an executive under the Alaska Wage and Hour Act, his Complaint alleging failure to pay overtime due under the Act must be dismissed.

**B.**    **Becker's employment discrimination claims under 42 U.S.C. § 1981 are barred because KIC is an Alaska Native Corporation exempt by law from such claims**.

Becker's claims under 42 U.S.C. § 1981 are nothing more than a backdoor attempt to raise claims of employment discrimination that he is expressly barred from pursuing under federal statutes specifically exempting ANCSA corporations from employment discrimination claims.[70]  This is not, however, the first time a plaintiff has attempted a similar backdoor circumvention of the well-established congressional policy "of providing a unique legal status to Indians in matters concerning tribal or 'on or near' reservation employment."[71]  In *Wardle v. The Ute Indian Tribe*,[72] the Tenth Circuit considered an employee's employment discrimination claims under the United States

---

[69]    Becker's Response to Interrogatory Nos. 5 and 9.

[70]    *See* 43 U.S.C. § 1626(g) (exempting Alaska Native Corporations from the definition of "employer" under the Civil Rights Act of 1964).

[71]    *Morton v. Mancari*, 417 U.S. 535, 547-48 (1974).

[72]    623 F.2d 670 (10th Cir. 1980).

Defendant's Motion for Summary Judgment - 12
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

Constitution and civil rights statutes, including 42 U.S.C. § 1981, brought precisely because the defendant employer was a federally recognized Indian tribe exempt from employment discrimination claims under the Civil Rights Act of 1964.[73]  Indian tribes and Alaska Native Corporations are not expressly exempt from application of 42 U.S.C. § 1981.  Yet as the *Wardle* court recognized, the specific provisions of the Civil Rights Act of 1964, designed to expressly address employment discrimination,[74] must control over the broad rights provisions of statutes like 42 U.S.C. § 1981.[75]  As such, the court held that 42 U.S.C. § 1981 failed to provide the plaintiff-employee with a cause of action.

Indeed, allowing Becker to pursue his claims under 42 U.S.C. § 1981 would render the protections afforded by ANCSA to Alaska Native Corporation employers meaningless.  Courts have long recognized the overlap between Title VII and 42 U.S.C. § 1981.[76]  Failing to bar suit by Becker opens Alaska Native Corporations to any claim for employment discrimination despite the clearly stated intent of Congress to exempt Alaska Native Corporations from such suits.  Moreover, Congress has routinely provided special treatment, including hiring preferences, to a range of Native Americans.[77]  As Judge Fletcher noted in a concurring opinion to the Ninth Circuit *Doe v. Kamehameha Schools*[78] decision, "nothing in § 1981 [indicates] that Congress intended to impose upon private institutions a more restrictive standard for the provision of benefits to [Natives] than it has imposed upon itself."[79]  Becker's 42 U.S.C. § 1981 claims must accordingly be dismissed.

---

[73]  *Id.* at 671-72.

[74]  *See, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) (describing purpose of the Civil Rights Act of 1964).

[75]  *Id.* at 673.

[76]  *See, e.g., Alexander*, 415 U.S. at 47.

[77]  *See Morton v. Mancari*, 417 U.S. 535, 554 (1974) (upholding hiring preference of the Bureau of Indian Affairs); *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 470 F.3d 827, 850-52 (9th Cir. 2006) (J. Fletcher, concurring) (detailing history of Congressional treatment of Native Hawaiians and other Native American groups).

[78]  470 F.3d 827 (9th Cir. 2006).

[79]  *Id.* at 857 (J. Fletcher, concurring).

Defendant's Motion for Summary Judgment - 13
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

**C.** **Even if Becker could assert disparate treatment claims under 42 U.S.C. §**
**1981, which he cannot do, his claim would still fail because Becker cannot**
**identify a single similarly situated individual who was treated more**
**favorably**.

Even were Becker permitted to bring a claim under 42 U.S.C. § 1981, the
undisputed facts show that Becker is unable to satisfy the elements of a prima facie
case for discrimination.  To establish a claim of discrimination under 42 U.S.C. § 1981,
an employee has the burden of establishing a prima facie case by producing evidence
that:  (1) he is a member of a protected class; (2) he was meeting his employer's
legitimate expectations at the time of the alleged adverse action; (3) he was subjected
to an adverse employment action; and (4) the employer treated similarly situated
employees not in the protected class more favorably.[80]  Over five iterations of his
discovery responses, Becker has still failed to identify a single similarly situated
employee, relying instead solely on a "feeling."[81]  Because Becker has failed to
establish a prima facie case of disparate treatment, his disparate treatment claim must
be dismissed.

For purposes of a disparate treatment analysis, "[i]ndividuals are similarly
situated when they have similar jobs and display similar conduct."[82]  Before an
employee can be identified as similarly situated, "an employee must have the same
supervisor, be subject to the same standards, and have engaged in the same
conduct."[83]  Even with five opportunities to identify similarly individuals as required to
support a disparate treatment claim, Becker has failed to do so.  Instead, Becker cites
the following inapposite facts as support for his disparate treatment claim.

1.    Alleged violations of KIC's progressive discipline and problem resolution
policies.  Becker alleges that KIC failed to provide progressive discipline and problem

---

[80]    *Surrell v. California*, 518 F.3d 1097, 1103, 1005-06 (9th Cir. 2008).
[81]    Becker's Response to KIC's Interrogatory No. 8 (stating, "I do not have absolute
comparisons for why I believe I [sic] my treatment was different based on race," and "I
do not have actual knowledge that this have never been done to non-shareholders," and
"Although, I do not know all of his encounters with shareholders, I just feel that he
treated me differently than shareholders.").
[82]    *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009).
[83]    *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 fn.17 (9th Cir. 2004) (citing
*Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 659 (6th cir. 1999).

Defendant's Motion for Summary Judgment - 14
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

resolution procedures provided for by the KIC employee handbook.[84]  Even assuming these allegations are true, they are irrelevant to any inquiry of disparate treatment absent a showing that similarly situated employees outside of Becker's protected class were treated differently.  No such showing is made at all with respect to Becker's allegations regarding KIC's implementation of its "Problem Resolution" policy.[85]  With respect to the "progressive discipline" policy, Becker identifies two employees, Kim Rottman and Lorrain Hunnicut, that he alleges were treated more favorably in that KIC did not terminate either in the first instance without "going the way more extra mile."[86]  Becker is effectively complaining that he did not get that extra mile.  However, taking Becker's allegations as true for purposes of this motion, issues with both Rottman and Hunnicutt involved alcohol abuse.[87]  Even assuming that the two employees had similar jobs as Becker, which they did not, and were outside of his protected class, the conduct described is in no way similar.  Before an employee is considered similarly situated, he or she must have engaged in similar conduct.[88]  Becker was discharged allegedly for failure to implement hiring policies, financial mismanagement, and inability to manage his employees.  There has never been any suggestion that Becker had any issues with alcohol, nor a suggestion that Rottman or Hunnicut failed to implement hiring policies.  Becker is accordingly not similarly situated with Rottman and Hunnicut.  As such, Becker's allegations cannot support a claim for disparate treatment.

2. <u>Financial Performance</u>.  Becker's allegations regarding financial performance amount to the allegation that he was terminated because of the poor financial performance of KIC HAL, but managers of other KIC subsidiaries—KIC Construction and KIC Facilities Management—were not terminated despite poor performance of their businesses.[89]  But to state a prima facie case for disparate treatment, Becker must show in part that employees with <u>similar</u> jobs were treated more

---

[84]  Becker's Response to KIC's Interrogatory No. 8.
[85]  *Id.* at Response 8.B.
[86]  *Id.* at Response 8.A.
[87]  *Id.* (alleging that "Kim Rottman was responsible for intentionally destroying two company vehicles during a drunken domestic lover's quarrel," and "Lorrain Hunnicut who had a serious drinking problem and was habitually absent as a result.")
[88]  *Vasquez*, 349 F.3d at 641 n.17.
[89]  Becker's Response to KIC's Interrogatory No. 8 at Response 8.C.

Defendant's Motion for Summary Judgment - 15
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8ᵗʰ Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

favorably.[90]  Management of a hardware and auto parts store is in no way similar to management of a construction company or facilities management company.[91]  All three subsidiaries cover widely varying business concerns for which management rightly has differing financial expectations.  Moreover, Becker was not terminated solely for poor financial performance, and there has been no suggestion that the managers of the other poor performing KIC subsidiaries either failed to implement KIC hiring policies or failed to properly manage employees.  As such, there is no showing that the other managers displayed similar conduct and Becker cannot use the fact that KIC did not terminate managers for KICC or KICFM to state a prima facie case of disparate treatment.

3.  <u>Attendance</u>.  Becker's termination letter cited his extended absences from the store as grounds for his termination.  Becker alleges disparate treatment in that he "would most willingly put [his] attendance record up against that of any employee of KIC whether salaried management or hourly personnel."[92]  Even if true as alleged, this fact will not support a disparate treatment claim for a number of reasons.  First, Becker has not identified a single employee with similar absences from the store.  Moreover, extended absences were only one of many reasons Becker was terminated.  Even assuming as alleged that Becker's record of attendance compares favorably with other employees, such other employees did not fail to implement hiring policies, fail to maintain financial performance of the KIC HAL store, or fail to properly manage employees.  Any such employees are accordingly not similarly situated because they have not engaged in similar conduct, and other employees conduct cannot be used by Becker to support a prima facie case for disparate treatment.

4.  <u>Other alleged disparate treatment</u>.  Becker provides an additional eight examples of supposed disparate treatment in his responses to discovery, none of which in any way identify similarly situated employees.  Becker alleges that KIC failed to pay accrued vacation owing, that KIC failed to honor an alleged one year employment contract, refused to honor an agreement related to Becker's housing, that Becker was

---

[90]    *Vasquez*, 349 F.3d at 641.

[91]    *See, e.g., Cooper v. Southern Co.*, 390 F.3d 695, 717 (11ᵗʰ Cir. 2004) (upholding exclusion of portions of an expert report where the report did not distinguish between differing job types of departments).

[92]    Becker's Response to KIC's Interrogatory No. 8 at Response 8.D.

Defendant's Motion for Summary Judgment - 16
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

not given board packets before board meetings, that Becker's reports were left out of board minutes, and that KIC president Tim Schuerch yelled at him.[93]  Even assuming the truth of these allegations, they are wholly irrelevant to a disparate treatment claim. Becker complains that upper management scolded Becker for not allowing a store employee, Daniel Henry, to attend training out of town,[94] but employees and managers are not similarly situated for purposes of a disparate treatment claim.[95]  Becker further complains that two prior managers of the KIC HAL store were allegedly permitted to resign instead of being discharged.[96]  Even if true, neither of the two prior managers of the KIC HAL store were shareholders and were in fact within the same protected class as Becker.[97]  Further, neither manager was similarly situated in that they were each subject to different supervisors.[98]  As such they were not similarly situated and cannot support a claim for disparate treatment.

In short, Becker has not identified a single employee working a similar job and displaying similar conduct who was treated more favorably than Becker.  A failure to identify a single similarly situated employee is a failure to state a prima facie case for disparate treatment.  As such, Becker's claim must be dismissed.

**D.    Becker's claims for retaliation under 42 U.S.C. § 1981 fail because KIC's shareholder hiring preference is legally based on a political distinction.**

Even were Becker permitted to bring his claims against KIC under 42 U.S.C. § 1981, Becker cannot prevail on his retaliation theory because KIC's shareholder hiring preference policy is legally based on a political designation.  To establish a prima facie case of retaliation under 42 U.S.C. § 1981, Becker must prove that he was:  (1) engaged in a protected activity; (2) that KIC subjected the employee to an adverse employment action; and (3) that there is a causal link between the activity and the adverse action.[99]  Becker cannot demonstrate that he was engaged in a protected

---

[93]    Becker's Response to KIC's Interrogatory No. 8 at Response 8.E.
[94]    *Id.*
[95]    *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004).
[96]    Becker's Response to Interrogatory No. 8 at Response 8.E.8.
[97]    Affidavit of Bill Morrissey, ¶ 9.
[98]    *Id.*
[99]    *Manatt v. Bank of America, NA*, 339 F.3d 792, 800 (9th Cir. 2003).

Defendant's Motion for Summary Judgment - 17
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8ᵗʰ Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

activity nor can he demonstrate a causal link between the adverse employment action and the protected activity.  Accordingly, Becker cannot state a prima facie case for retaliation.

       1.   <u>Protected Activity</u>.  Becker has alleged that KIC retaliated against him because Becker refused to implement KIC's shareholder hiring preference.[100]  Engaging in a protected activity includes protesting or otherwise opposing unlawful employment discrimination.[101]  However, Becker cannot establish that KIC's shareholder hiring preference amounted to unlawful employment discrimination.  Courts have long upheld similar hiring preferences on the grounds that a preference for shareholders in Alaska Native Corporations or members of recognized Indian tribes is a preference based on political designations and not on race.[102]

       Indeed, the most recent consideration of such hiring preferences was in the United States District Court for the District of Alaska.  In *Conitz v. Teck Cominco Alaska, Inc.*,[103] Judge Beistline rejected claims for discrimination and retaliation on the grounds that a consultant's hiring policy in favor of shareholders in an Alaska Native Corporation was a surrogate for race and illegal under state and federal law.  The court rejected those claims because the plaintiff had failed to establish a prima facie case, but noted further:

> [A]pplication of the shareholder hiring preference is not prohibited by law because it is based on the permissible distinction of shareholder status rather than race.  Not all Natives are NANA shareholders and not all

---

[100]    Complaint ¶ 3.13 (Doc. 1-2, p. 7 of 9); Becker's Response to KIC's Request for Admission No. 3 and KIC's Interrogatory No. 2.

[101]    *Moyo v. Gomez*, 40 F.3d 982, 984 (9ᵗʰ Cir. 1994).

[102]    *Alaska Chapter, Assoc. General Contractors of America, Inc. v. Pierce*, 694 F.2d 1162, 1168, n.10 (9ᵗʰ cir. 1982); *see also Morton v. Mancari*, 417 U.S. 535, 553, n.24 (1974) (upholding a Bureau of Indian Affairs hiring preference for "Indians" reasoning in part that because the preference applied to members of federally recognized tribes it was political rather than racial in nature); *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 470 F.3d 827, 850-53 (9ᵗʰ Cir. 2006) (J. Fletcher, concurring) (reviewing congressional acts creating preferences for native Hawaiians, concluding that "I see nothing in § 1981 to indicate that Congress intended to impose upon private institutions a more restrictive standard for the provision of benefits to Native Hawaiians than it has imposed upon itself.").

[103]    Order regarding Pending Motions, No. 4:06-cv-0015-RRB (D. Alaska July 21, 2008), *affd. on other grounds* 331 Fed. Appx. 512, 513 (9ᵗʰ Cir. 2009).

Defendant's Motion for Summary Judgment - 18
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

Davis Wright Tremaine LLP

LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

> NANA shareholders are Alaska Natives.  A non-Native can become a
> NANA shareholder through marriage, adoption, or inheritance, and
> counsel for NANA avers that at least 65 of NANA's 11,655 current
> shareholders fall into this category.  Thus, Plaintiff's claim that the
> shareholder hiring preference is a "surrogate" or "proxy" for race is
> incorrect.[104]

Consistent with Judge Beistline's holding in *Conitz* and every other court that has
considered the issue, KIC's shareholder hiring preference is a preference lawfully based
on a political distinction.  Indeed, the KIC policy expressly applies to shareholder
spouses and dependants, individuals who may or may not be racially classified as
Alaska Native.

Moreover, Becker cannot argue that he reasonably believed that the KIC
shareholder hiring preference was unlawful.  In *E.E.O.C. v. Luce, Forward, Hamilton &
Scripps*,[105] the Ninth Circuit held that an employee's belief that it was an unlawful
employment practice to require an employee to sign an arbitration agreement was
unreasonable in light of the fact that the United States Supreme Court had expressly
permitted compulsory arbitration clauses.[106]  As the court noted, "In the face of
voluminous contrary legal precedent, [Plaintiff] could not have reasonably believed
[Defendant] was engaged in unlawful activity when it required arbitration as a condition
of employment."[107]  Similarly, in this instance the United States Supreme Court decided
*Mancari* in 1974, and Congress has provided numerous benefits over the years to
Alaska Natives and other Native Americans based on their status as Alaska Natives or
Native Americans by, for example, expressly exempting Alaska Native Corporations
from the application of Title VII.[108]  Furthermore, Becker has admitted that his notion
that the shareholder hiring preference was illegal was based solely on "belief" and that
he took no steps to confirm or deny that belief until <u>after</u> he was terminated.[109]  Becker's
belief that the hiring preference was unlawful was unreasonable in the face of ample

---

[104]    *Id.* at 4.
[105]    303 F.3d 994 (9th Cir. 2002).
[106]    *Id.* at 1005.
[107]    *Id.* at 1005-06.
[108]    43 U.S.C. § 1626(g).
[109]    Becker's Response to KIC's Interrogatory No. 1.

Defendant's Motion for Summary Judgment - 19
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

legal precedent to the contrary and absent any steps to confirm or deny what can only be described as an apparent subjective belief.

2.   <u>Causal link</u>.  Taking facts as alleged by Becker as true for purposes of this summary judgment motion, Becker first complained to KIC upper management about his belief regarding the KIC shareholder hiring preference shortly after a January 15, 2007, board meeting.[110]  Becker was not terminated as manager of KIC HAL until June 22, 2007.  Finding a causal link between Becker's allegedly protected activity— complaining about the KIC shareholder hiring policy—and the adverse employment action that occurred six months later is fanciful at best.

**E.   Becker cannot identify a public policy violated by his discharge and accordingly has no tort claim for wrongful discharge.**

A claim for wrongful discharge is typically brought as a breach of contract claim.[111]  Yet Becker attempts to shoehorn this claim into a tort.[112]  Alaska courts have allowed remedies in tort for retaliatory discharge where the discharge involved a violation of an explicit public policy.[113]  For example, the Alaska Supreme Court has recognized claims in tort related to public policies protecting workers who make workers' compensation claims or act as whistleblowers[114] and public policies protecting witnesses from retaliation.[115]  Yet the Alaska Supreme Court has made similarly clear that no tort action is available if the alleged wrongful discharge did not violate an express public policy.[116]  Mere violation of the covenant of good faith and fair dealing will not suffice to support an action in tort.[117]

---

[110]   Complaint, ¶ 2.7.  (Doc. 1-2, p. 3 of 9.)
[111]   *See, e.g., Walt v. State of Alaska*, 751 P.2d 1345, 1351 (Alaska 1988) ("To the extent that Walt has attempted to allege a tort based on a bad faith, unfair discharge we similarly conclude that such allegations give rise to a breach of contract action but not to a common law tort action.").
[112]   Complaint, ¶ 3.20.  (Doc. 1-2, p. 8 of 9.)
[113]   *Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 438 (Alaska 2004).
[114]   *Id.* at 438.
[115]   *Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 812-13 (Alaska 2005).
[116]   *ARCO Alaska, Inc. v. Akers*, 753 P.2d 1150, 1153 (Alaska 1988).
[117]   *Id.*

Defendant's Motion for Summary Judgment - 20
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8ᵗʰ Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

As discussed above, KIC's shareholder hiring preference is a legal policy based on a political designation and not on race.  Termination of Becker for failure to implement the hiring policy is a termination for insubordination and does not violate any public policies regarding discrimination in the workplace.  Becker has not and cannot identify a single public policy that KIC violated, and as such fails to satisfy the elements of a wrongful discharge tort claim.

**F.      Becker's claims must be dismissed for failure to mitigate his damages.**

Courts have long recognized that a plaintiff alleging harm must act to mitigate his or her damages.[118]  Indeed, Alaska recognizes the "universal rule that a wronged party must use reasonable efforts to avoid the consequences of injury done by another."[119] Becker admits that after his termination by KIC, "I was soon offered a lower management position with AC Company."[120]  After declining this position, Becker states, "I made no further attempt to gain employment in retail management for which I am most qualified."[121]  Not only did Becker turn down a job offer soon after his discharge, he made no further attempts to find work.  Becker has failed to mitigate his damages and cannot now ask that KIC make him whole.  As such, Becker's claims must be dismissed.

## IV.  CONCLUSIONS

There is no genuine issue to any material fact to prevent the court from granting KIC's Motion for Summary Judgment.  The uncontested facts developed to date show that Becker was acting at all times as an executive, exempt from application of the Alaska Wage and Hour Act.  As such, his Wage and Hour claim must be dismissed. Becker's claims under 42 U.S.C. § 1981 fail for a number of reasons.  First, Becker cannot attempt to backdoor an employment discrimination claim that is expressly barred under federal statutes designed for the very purpose of preventing employment discrimination.  Second, Becker's repeated attempts at responding to KIC's discovery requests show that Becker cannot establish a prima facie case of disparate treatment

---

[118]   *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020-21 (9th Cir. 2000) (discussing mitigation in employment discrimination case).
[119]   *University of Alaska v. Chauvin*, 521 P.2d 1234, 1239 (Alaska 1974).
[120]   Becker's Second Response to KIC's Interrogatory No. 14.
[121]   *Id.*

Defendant's Motion for Summary Judgment - 21
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

under 42 U.S.C. § 1981 because he cannot identify a single similarly situated individual who was treated more favorably.  Third, Becker's retaliation claim under 42 U.S.C. § 1981 fails because KIC's shareholder hiring preference policy is a legal policy based on a political designation and not race.  And fourth, Becker's retaliation claim under 42 U.S.C. § 1981 fails because Becker cannot establish a causal link between his first complaining about the shareholder hiring preference and his termination.  Becker's wrongful discharge tort claim must be dismissed because Becker has not and cannot identify a single public policy violated by his termination.  Finally, Becker's claims must be dismissed because Becker has breached the universal rule that a wronged plaintiff must make efforts to mitigate his damages which he has not done.

For the above reasons, KIC respectfully requests that the Court grant its Motion for Summary Judgment as to all claims asserted by Becker.

DATED this 5th_ day of January, 2010.

Davis Wright Tremaine LLP
Attorneys for Defendant
Kikiktagruk Inupiat Corporation

By:___ s/Ted Wellman_____
Ted Wellman, ABA # 9111107
Davis Wright Tremaine LLP
701 West 8th Avenue, Suite 800
Anchorage, AK  99501
Telephone:  (907) 257-5300
Facsimile:  (907) 257-5399
E-mail:  tedwellman@dwt.com

By:___ s/M. Scott Broadwell_____
M. Scott Broadwell, ABA #0611069
Davis Wright Tremaine LLP
701 West 8th Avenue, Suite 800
Anchorage, AK  99501
Telephone:  (907) 257-5300
Facsimile:  (907) 257-5399
E-mail:  scottbroadwell@dwt.com

Defendant's Motion for Summary Judgment - 22
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB

Certificate of Service

The undersigned certifies that on January 5, 2010, a true and correct copy of the foregoing Defendant's Motion for Summary Judgment was served via electronic mail on the following attorneys or parties of record:

Moshe Calberg Zorea

Isaac D. Zorea


By:_____/s/ M. Scott Broadwell_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8ᵗʰ Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

Defendant's Motion for Summary Judgment - 23
*Becker v. Kikiktagruk Inupiat Corp.,* Case No. 3:09-cv-00015-TMB
DWT 13683413v2 0086450-000002