IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGG CONITZ,<br><br>        Plaintiff,<br><br>vs.<br><br>TECK ALASKA INCORPORATED,<br><br>        Defendant. | Case No. 4:09-cv-0020-RRB<br><br>**ORDER RE CROSS-MOTIONS<br>FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION

Before the Court are Plaintiff Gregg Conitz and Defendant Teck Alaska Incorporated ("Teck") with what amount to cross-motions for summary judgment. At Docket 49, Conitz requests a permanent injunction against Teck's shareholder employment preference on the grounds that it violates Title VII of the Civil Rights Act. The issuance of such an injunction would require this Court to essentially dispose of all the legal issues presented in this case, so the Court will treat it as a motion for summary judgment. Teck files its own motion for summary judgment at Docket 57, arguing that the shareholder preference does not violate Title VII and that, in any event, Conitz has no standing to make a Title VII claim because he was not qualified for the promotion which he sought in 2008.

Having reviewed the voluminous briefs submitted by the parties, the Court concludes that oral argument is neither necessary nor warranted.

## II.   BACKGROUND

Conitz is a Teck employee working at the Red Dog mine, which Teck operates in cooperation with co-Defendant NANA Regional Corporation ("NANA"), an Alaska Native corporation created under the Alaska Native Claims Settlement Act of 1971 (ANCSA). Conitz claims that he has been continually passed over for promotion because of Teck's policy of favoring NANA shareholders in hiring. According to Conitz, the policy is racially discriminatory because the vast majority of NANA shareholders are Alaska Natives. According to the Shareholder Records Manager for NANA, out of 12,264 total shareholders, there are 69 who are not Alaska Natives who have obtained shares through inheritance.[1]

This suit is Conitz's second attempt to invalidate Teck's shareholder employment preference. In <u>Conitz v. Teck Cominco Alaska Inc.</u>, 4:06-cv-00015-RRB ("<u>Conitz I</u>"), this Court granted summary judgment to Teck on two independent grounds. The Court held that Conitz could not claim discrimination in hiring because he was not qualified for the positions for which he had applied, and because

---

[1]      Docket 74, Exhibit 1.

ORDER RE CROSS-MOTIONS
   FOR SUMMARY JUDGMENT - 2
4:09-CV-0020-RRB

Teck's employment preference for shareholders of the NANA Regional Corporation ("NANA") was not a racial preference.[2] The Ninth Circuit affirmed the Court's decision with regard to Conitz's qualifications, but did not address whether shareholder preference constitutes racial discrimination.[3]

In this case, Conitz again alleges that he was discriminated against on July 25, 2008, when he was passed over for a promotion to the position of Mine Operations Supervisor in favor of Charles Barger, an Alaska Native/NANA Shareholder.[4] Conitz claims that he was more qualified for the management position than was Barger, an assertion which his supervisors at Teck strenuously deny.

## III. RULE OF DECISION

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[5] The moving party always bears the burden of demonstrating the absence of a material issue of fact.[6] The moving party need not present evidence; it need only point out the lack of

---

[2]   Docket 10, Exhibit 2.

[3]   Docket 20, Exhibit 1.

[4]   Docket 1 at 10-11.

[5]   Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[6]   Celotex, 477 U.S. at 323.

any genuine dispute as to material fact.[7] Once the moving party meets this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue of material fact.[8] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[9]

## IV.  DISCUSSION

To establish a prima facie case for racial discrimination under Title VII, "the complainant must show that (1) the complainant belongs to a protected class; (2) the complainant applied for and was qualified for a job for which the employer was seeking applications; (3) the complainant was rejected despite the complainant's qualifications; and (4) after the complainant's rejection, the position remained open and the employer continued seeking applications from persons with the complainant's qualifications."[10] "[I]f an employer has not left the disputed position open and has instead hired someone else, the fourth

---

[7]    Id. at 323-325.

[8]    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, (1986).

[9]    Id.

[10]    Raad v. Alaska State Comm'n for Human Rights, 86 P.3d 899, 904 (Alaska 2004).

ORDER RE CROSS-MOTIONS
  FOR SUMMARY JUDGMENT - 4
4:09-CV-0020-RRB

element of the prima facie case is the hiring of an individual not within the same protected class as the complainant."[11]

Conitz's claims are fairly simple. Conitz argues that the shareholder preference amounts to racial discrimination because nearly all of NANA's shareholders are Alaska Natives and he is Caucasian. Teck puts forth a number of arguments as to why Conitz has failed to make a prima facie case for racial discrimination. The Court will first discuss Teck's arguments with regard to the legality of the shareholder preference and then address Conitz's qualifications for the specific promotion which is the basis of this litigation.

A.    The Shareholder Preference Is Not Racially Discriminatory

In Conitz I, this Court held that the shareholder preference "is based on the permissible distinction of shareholder status rather than race."[12] The Court cited Morton v. Mancari, 417 U.S. 535 (1974), in which the Supreme Court ruled that a Bureau of Indian Affairs hiring preference for members of Indian tribes was "political rather than racial in nature."[13]

---

[11]    Id.

[12]    Docket 10, Exhibit 2 at 4.

[13]    417 U.S. at 554 n.24.

The Court notes that Mancari is not a perfect analogue for this case, since it involved governmental action, whereas this case concerns the actions of a private employer. However, Mancari was cited for the proposition that distinctions based on non-racial categories do not trigger Title VII liability simply because they are related to national ancestry.[14]

As in Conitz I, the Court must decide whether Teck's shareholder preference is racially discriminatory. There is no question that if NANA were Conitz's employer, it would be exempt from Title VII liability under the exemption provided in 43 U.S.C. § 1626(g). According to the Mancari decision, it would also not be racially discriminatory for Teck to give preference to members of all Indian tribes. However, the Ninth Circuit has held that employment preferences for members of a *particular* tribe are racially discriminatory when adopted by a non-tribal employer.[15] This is true even where, as in this case, the private employer has

---

[14]   The Mancari Court held that the BIA's tribal employment preference was not racial in character despite the fact that it was restricted to members of tribes who possessed more than one-fourth Indian blood. 417 U.S. at 554 n.24.

[15]   Dawavendewa v. Salt River Project Agr. Imp. and Power Dist., 154 F.3d 1117, 1123 (9th Cir. 1998) ("[G]eneral Indian preference policies were not intended to allow distinctions among different tribes.")

ORDER RE CROSS-MOTIONS
   FOR SUMMARY JUDGMENT - 6
4:09-CV-0020-RRB

instituted the hiring preference as part of an agreement permitting it to operate on tribal lands.[16]

Therefore, if Teck's employment preference were explicitly for Alaska Natives, or Alaska Natives of NANA regional origin, it would violate Title VII. Teck vehemently denies that any such preference exists; it insists that the preference is for NANA shareholders, who are overwhelmingly though not exclusively Alaska Natives.[17]

Teck's shareholder preference policy is not written down anywhere, although it is memorialized in the operating agreement between Teck and NANA. The agreement requires that "as many as possible of the employees required by" Teck at the Red Dog Mine "shall be Natives of the NANA Region."[18] Although "Natives of the NANA Region" sounds like a racial category, the agreement explicitly provides that "'Natives of the NANA Region' means the stockholders of NANA whose stock carries voting rights, and the descendants and spouses of such stockholders."[19] By its own terms, then, the shareholder preference policy is not racial in character,

_____

[16]    See Dawavendewa at 1118.

[17]    Docket 60 at 3 ("The hiring preference for NANA shareholders is applied to all NANA shareholders equally, [...] without regard for whether the shareholder is an Alaska Native.").

[18]    Conitz I, Docket 64, Exhibit 7 at 7.

[19]    Conitz I, Docket 64, Exhibit 7 at 5.

although both parties have tended to confuse rather than clarify the issue by using the terms "NANA shareholder" and "Natives of the NANA Region" interchangeably.[20]

Conitz also argues that the shareholder preference, although not explicitly racial, is a proxy for racial discrimination. He cites Bonilla v. Oakland Scavenger Co., 697 F.2d 1297 (9th Cir. 1982), in which the Ninth Circuit held that a shareholder hiring preference was a proxy for racial discrimination where the employer "(1) [assigned] the better jobs with higher pay and more guaranteed hours to the shareholder-employees, who were exclusively of Italian ancestry, and (2) [limited] share ownership to persons who were of Italian ancestry and were either members of the family or close friends of a current shareholder."[21]

The Bonilla precedent is inapplicable in this case for two reasons. First, several of the beneficiaries of the discrimination in Bonilla were non-shareholders of Italian ancestry. Conitz has not alleged that any Alaska Natives other than NANA shareholders have benefitted from Teck's shareholder preference policy.

Second, much of the discrimination which took place in Bonilla was done by restricting the selection of shareholders to those of

---

[20]    See e.g. Docket 49, Exhibit 2.

[21]    697 F.2d at 1302.

Italian ancestry. The Ninth Circuit held that in those limited circumstances the process of selecting shareholders was subject to Title VII scrutiny.[22] NANA's shareholder selection, however, is prescribed by an act of Congress, namely ANCSA. It would be improper for this Court to find that NANA's shareholder selection violates Title VII when it is Congress that has defined the shareholder class. Legislative enactments should be read in harmony with one another, whenever possible.[23] The Court simply cannot conclude that Congress, in creating the Native Corporations, intended them to have less of an ability to negotiate contracts favorable to their shareholders than would any other corporation.

The shareholder preference is not a racial preference, and Conitz has not shown that it is applied as a proxy for racial discrimination. Therefore, the preference is not a racially discriminatory policy prohibited by the Civil Rights Act. The Court need not address Teck's argument that the Red Dog Mine is a joint venture between NANA and Teck, and therefore exempt from Title VII

---

[22]   Bonilla at 1302-03 ("While we decline to lay down an all-encompassing rule, under these circumstances the admittedly discriminatory employment practices of the Company are within the reach of Title VII in spite of the effort to characterize those practices as 'proprietory [sic] rights.'").

[23]   Tahoe Regional Planning Agency v. McKay, 769 F.2d 534, 540 n.10 (9th Cir. 1985). ("Given an apparent conflict between the plain language of statutes, we must pursue legislative intent in an effort to harmonize provisions, wherever possible.")

under the native corporation exemption found in 43 U.S.C. § 1626(g).

**B.   Conitz Has Failed to Show That He Was Qualified For the Promotion**

In <u>Conitz I</u>, the Court ruled that Conitz had failed to make a prima facie case of discrimination because he had not supplied evidence that he was as qualified for a promotion as those individuals who were promoted. His case is similarly deficient in this litigation. In arguing that he was more qualified for the 2008 promotion than Barger, Conitz primarily relies upon his nineteen years of experience at the mine, versus eight years for Barger.[24] Besides his years of experience, Conitz presents no evidence of his qualifications other than his own affidavit, in which he asserts: "Mr. Barger was far less qualified for the position than I. Had Mr. Barger not been assigned to Acting Supervising duty instead of me, Mr. Barger would not have had any supervisory experience."[25]

Of course, as this statement indicates, Barger *had* been previously assigned as an Acting Supervisor, and therefore *did* have supervisory experience at the time of his 2008 promotion. Conitz also recounts that he discussed the decision to promote Barger with his supervisor Larry Hanna, who told him Barger was "doing a better

---

[24]   Docket 49, Exhibit 8 at 4.

[25]   Docket 49, Exhibit 7 at 11.

ORDER RE CROSS-MOTIONS
    FOR SUMMARY JUDGMENT - 10
4:09-CV-0020-RRB

job" than Conitz, but "would never give me a specific reason as to why he thought so."[26]

The overwhelming testimony of Conitz's superiors contradicts his characterization of his qualifications. Robert Scott, who was general manager of the Red Dog Mine from 2003-2005, testifies that "Mr. Conitz's job performance, particularly with respect to safety, made him unsuited to serve as an example for others to follow, which is an integral component of any supervisory position at Teck[.]"[27] Larry Hanna, who made the decision to promote Barger over Conitz in 2008, says,

> I selected Mr. Barger to fill a Shift Supervisor position because his leadership skills were superior to those of Mr. Conitz and each of the other candidates, because he was most adept in making the best use of people, and because he had demonstrated superior management skills.[28]

Hanna asserts that Barger was "better qualified than any other applicant." Of Conitz, Hanna testifies as follows:

> Mr. Conitz is an adequate operator who has long showed mediocre performance in his job. [...] His attitude is poor. He lacks leadership abilities, does not demonstrate initiative, and is not a team player. [...] [H]e has limited abilities to perform tasks that require finesse as an operator. Historically, his safety record has been problematic. At every level, Mr. Conitz has failed to

---

[26]   Docket 49, Exhibit 8 at 3.

[27]   Docket 51, Exhibit 5 at 4-5.

[28]   Docket 51, Exhibit 7 at 3.

demonstrate that he has the skills that Teck seeks in its supervisors and managers.[29]

This opinion is echoed by Jim Somers, Superintendent of Human Resources at Teck, who calls Conitz a "mediocre employee" who has "typically been ranked at or near the bottom of the applicant pool."[30]

The Ninth Circuit has repeatedly refused to find a "genuine issue" where the only evidence presented is "uncorroborated and self-serving" testimony.[31] In this case, the only evidence to support Conitz's qualification for the supervisor position is his own affidavit. While the Court does not disregard Conitz's affidavit entirely, it is at odds with the testimony of all his superiors at the Red Dog Mine. It is an "uncorroborated and self-serving affidavit" which is insufficient to defeat a motion for summary judgment where substantial contrary evidence has been submitted. In light of the paucity of evidence that Conitz was qualified for a promotion, and the abundance of evidence to the

---

[29]    Docket 51, Exhibit 7 at 3.

[30]    Docket 51, Exhibit 8 at 3-4.

[31]    Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)); see generally Johnson v. Washington Metro. Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989) (discussing cases in which self-serving testimony uncorroborated by other evidence did not create a genuine issue of material fact).

ORDER RE CROSS-MOTIONS
   FOR SUMMARY JUDGMENT - 12
4:09-CV-0020-RRB

contrary, the Court holds that Conitz has failed to make out a prima facie case for racial discrimination under Title VII.

## V.    CONCLUSION

Teck's employment preference for NANA shareholders is not a racial distinction and therefore does not violate either the Civil Rights Act or any other provisions of federal or state law cited by Conitz in his complaint. Furthermore, Conitz has failed to make a prima facie case of discrimination because he was not qualified for the promotion which he sought and for which Charles Barger was accepted. For the foregoing reasons, Teck's Motion for Summary Judgment at **Docket 57** is **GRANTED** and Conitz's Motion for a Permanent Injunction at **Docket 49** is **DENIED**. The motions to strike at **Dockets 69** and **91** are **DENIED AS MOOT** because the evidence sought to be excluded had no effect on the Court's decision. Teck's Motion to Change Venue at **Docket 28** is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

ENTERED this 20th day of January, 2010.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE